## CARSON *v.* UNITED STATES (No. 512).[1]

LEATHER GLOVES EMBROIDERED WITH MORE THAN THREE SINGLE STRANDS.

The board found in effect that the testimony and the samples failed to show that the gloves of this importation were not stitched or embroidered with more than three single strands or cords and that they were accordingly subject to the accumulated duties provided for in paragraph 459, tariff act of 1909. To warrant a reversal of this finding it must appear to be wholly without evidence to support it, or that it is clearly contrary to the weight of evidence as offered. Applying this rule, irrespective of any opinion proper on the merits or on a review of the authorities, the testimony and exhibits afford no such warrant, and the board is affirmed.

United States Court of Customs Appeals, May 29, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24000 (T. D. 30944).

[Affirmed.]

*Lester C. Childs* for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The issue here is the classification of certain leather gloves under the tariff act of August 5, 1909, and the only question is whether they

---

[1] Reported in T. D. 31656 (20 Treas. Dec., 1159).

are subject to the cumulative duties provided in paragraph 459 of the act, which reads as follows:

459. In addition to the foregoing rates there shall be paid the following cumulative duties: On all leather gloves, when lined, one dollar per dozen pairs; on all pique or prix seam gloves, forty cents per dozen pairs; on all gloves stitched or embroidered, with more than three single strands or cords, forty cents per dozen pairs.

The merchandise was assessed thereunder by the collector, whose action was sustained by the Board of General Appraisers. We quote the decision of the board:

McClelland, *General Appraiser:* These protests involve the classification of certain leather gloves under the tariff act of 1909. The claim is that the gloves are not stitched or embroidered with more than three single strands or cords and therefore that the cumulative duty of 40 cents per dozen pairs should not have been assessed under paragraph 459 of said act.

From an examination of the record and samples of the gloves in question we find that duty was properly assessed and overrule the protests, the decision of the collector being affirmed in each case.

The record shows that two witnesses were improved by the appellants and that none were called on behalf of the United States.

We insert here the substance of their testimony. The first witness said that the three samples which he produced correctly represented the merchandise involved; that he was familiar with the different processes of embroidery and stitching and that there appeared on the outside of the back of each sample six chains of embroidery and on the inside six single rows of stitching; that he meant by six chains of embroidery on the outside, six rows. He was then asked:

Q. I notice on the back of this glove, which is Exhibit 2, there are twelve rows of stitching and three cords. What do you mean by six chains of embroidery?—A. I mean that what you call a cord, the raised part, is one thread, and the other one thread. I make those two threads. The outside is a continued thread right around making two, four, six.

Q. What you call the raised part of the glove is just the leather itself forming a ridge?—A. Sometimes call it a cord.

Q. On each side of each cord are two rows of stitching, aren't there?—A. Yes, sir.

Q. Those two rows completely encircle the cord?—A. Yes, sir.

Q. Is not that in itself known as a point?—A. The whole thing is known as a point.

Q. On each point you maintain there are two chains of embroidery?—A. Two chains of stitching.

Q. Why aren't there four chains?—A. There are two.

Q. But there are four rows?—A. One continued chain right around.

Q. The reason you call it two chains instead of four is because the four rows are made up of two single strands of thread?—A. Yes, sir.

Q. That is true of all the gloves?—A. Yes, that follows, too, on all the exhibits.

Q. Then on the inside, where there are ten distinct rows of stitching, you come to the conclusion that there are six rows for the same reason you have just stated, that one complete circle is made by one strand?—A. By one strand.

Q. So that the ornamentation, as far as the stitching is concerned, was made up with six threads?—A. To make the entire glove.

Q. The ornamentation?—A. The ornamentation.

Q. And the cords themselves are extra—how are they produced?—A. No, the cords are included. The cords are included. The cord is one thread and the stitching is one thread, which makes two threads—two, four, six altogether.

Q. Are the four rows around each cord made with one thread?—A. Two rows made with one thread. Just one right around. Might go around a dozen times, but one thread just the same.

Q. So in each instance where there appear four parallel rows that is done with one thread?—A. One thread.

Q. Then three threads made twelve parallel rows and three more threads made the three cords?—A. Yes, sir.

Q. That is true in each of the gloves?—A. Yes, sir.

The other witness testified that he was experienced in and familiar with the making of gloves. He was shown Exhibit 2 and asked:

Q. * * * State how many chains of embroidery are on the outside of the back of that glove?—A. That depends on what you mean by chains.

Q. What do you mean by chains?—A. I would call every one of those rows extending from side to side, from end to end, a continuous thread that is not broken.

Q. That is your idea of the word "chain"?—A. Yes, sir.

Q. With that idea, how many chains are on the back of that glove?—A. Three.

Q. How many on the inside?—A. Well, you mean of the total number there? I was taking one point there. It would be nine.

Q. How many on the inside?—A. The same number.

Q. * * * How many chains of embroidery appear on the back of that glove [Exhibit 3]?—A. Nine.

Q. On the inside?—A. The same.

He then testified that Exhibit 1 had the same thing on the inside and outside.

The attention of both witnesses was also called to what is referred to in the record as "the official sample in protest 368919" and each gave testimony relating thereto. We do not consider this evidence for two reasons: First, the record shows that the counsel for importers said that "protest 368919 is submitted on the official sample"; second, the decision of the Board of General Appraisers does not appear to refer thereto and the appellants' assignment of errors, which specifically sets forth the numbers of the protests to which it relates, does not include number 368919.

The substance of the appellants' contention is that the issue here is identical with that involved in United States *v.* La Fetra (178 Fed. Rep., 1006). This was a decision of the Circuit Court of Appeals sustaining the decision of the Circuit Court, which is found in 172 Federal Reporter, 297, where the Circuit Court sustained the decision of the Board of General Appraisers reported in T. D. 28966, in which case the board reversed the action of the collector.

The United States admits in its brief that "if the case turned only on the question of identity between the gloves in suit and the gloves passed on in the La Fetra case the position of the appellants would be difficult to challenge," and claims that the facts before us distinguish it from that case.

The cases above referred to involved the interpretation of paragraph 445 of the tariff act of 1897, which is identical in language with paragraph 459 of the act of 1909.

From the decision of the board in the La Fetra case we learn that—

The style of embroidery in issue is illustrated by Exhibits A, B, and C, which show three points each, each point having three distinct rows of stitching. Such stitching shows nine easily distinguishable chains of embroidery on the outside of the backs of the gloves and nine single rows of stitching on the inside of the backs thereof.

Judge Platt, in the Circuit Court, in affirming the decision of the board, said in substance that gloves exactly like those involved had been passed upon in that court in Trefousse *et al. v.* United States, and were found not to be subject to the cumulative duty provided in said paragraph 445. He further indicated that the Government had undertaken to show that the gloves in the La Fetra case were uniformly, commonly, and generally known in the trade as being "stitched or embroidered with more than three single strands or cords," and had failed in this contention, and for that reason, applying the principles of the Trefousse decision, he sustained the board.

By referring to the Trefousse case, the opinion in which was also written by Judge Platt, it appears that the Board of General Appraisers had sustained the assessment for cumulative duty on certain gloves in said paragraph 445, and referring to the decision of the board Judge Platt said:

They followed a rule which they had adopted in G. A. 5595 (T. D. 25038), for the ascertainment of the number of strands or cords upon a glove, and found that by some peculiar method of reasoning, there were more than three single strands upon the gloves in question. It appears, however, that the same board, in G. A. 4241 (T. D. 19945), held that certain leather gloves, having upon them embroidery in three rows, but showing on the backs of the gloves that each row presented the appearance of three-plait crochet work, the effect being produced by the needle with only one cord or strand of thread, as is shown by the stitching through and on the inside of the glove, were in fact not stitched or embroidered with more than three single strands or cords. This decision, upon appeal, was affirmed by Judge Wheeler, in United States *v.* Robinson (C. C.) (124 Fed. Rep., 1013), and has been acquiesced in by the Government. It would seem that the Board of General Appraisers in such a matter as this, when the gloves in respect of the manner of stitching are manifestly the same as those considered in G. A. 4241, ought to have followed the very clearly expressed and well-defined rule governing the provision found in paragraph 445.

In the La Fetra case the Circuit Court of Appeals in a *per curiam* opinion said:

If this were a case of novel impression, more weight might be given to the argument advanced by the Government in support of its contention as to the meaning of the words "single strand." But the question has been several times before the courts, and it appears from examination of the samples X and Y that goods identically like the present importations were before this court when the decision of the Circuit Court in Trefousse *v.* United States (144 Fed. Rep., 708) was affirmed several years ago. (154 Fed. Rep., 1005; 83 C. C. A., 679.) A great deal of testimony has been taken in this case as to commercial designation, but it is so conflicting that we agree with the Circuit Court in the conclusion that it is impossible to deduce therefrom any semblance of uniformity.

It will be observed, therefore, that in the La Fetra case both the Circuit Court and the Circuit Court of Appeals held in effect that gloves embroidered in three rows but showing on the backs of the gloves that each row presented the appearance of a 3-plait crochet work, the effect being produced by the needle with only one cord or strand of thread,

as is shown by the stitching through and on the inside of the glove, were in fact not stitched or embroidered with more than three single strands or cords within the meaning of said paragraph 445.

If we assume that this be the correct interpretation of paragraph 459 of the act of 1909, the question is whether the gloves involved here are within that. description, as before stated. The arguments upon each side before us proceed upon the theory that if the facts are the same the La Fetra case is controlling.

By their decision the board has in effect found that the testimony and the samples fail to establish that these gloves are not stitched or embroidered with more than three single strands or cords.

In order to warrant a reversal of the board, we must be satisfied that its finding is wholly without evidence to support it or that it is clearly contrary to the weight of evidence. United States *v.* Riebe (1 Ct. Cust. Appls., 19; T. D. 30776); Holbrook *v.* United States (1 Ct. Cust. Appls., 263; T. D. 31317).

Applying this rule, whatever may be our opinion upon the merits of this case or the controlling effect of the decisions to which we are cited, we are nevertheless constrained to say that we are unable from the testimony and the exhibits to find sufficient warrant to say that the judgment of the Board of General Appraisers ought to be reversed, and it is therefore *affirmed*.